HAZOURI, J.
 

 Hilb Rogal & Hobbs of Florida, Inc. (HRH) appeals the trial court’s order granting Mark Grimmel and Egis Insurance Advisors, LLC’s (Grimmel) motion to dissolve its temporary injunction. We reverse.
 

 HRH is an insurance broker that provides insurance services for its customers. HRH hired Grimmel as a producer to service its existing customers, to expand the business of those existing customers, and to generate new customers. At the time Grimmel was hired, he signed an employment agreement with HRH, which included a non-piracy clause prohibiting Grimmel from soliciting HRH’s customers following the termination of his employment. Approximately four years after being hired by HRH, Grimmel resigned to operate his own competing insurance brokerage firm, Egis Insurance Advisors. Following Grimmel’s resignation, HRH filed a verified complaint for injunctive relief and damages against Grimmel and his newly created company. It alleged that Grimmel violated the non-piracy covenant in his employment agreement with HRH by misappropriating business from HRH to Egis. HRH filed an ex-parte emergency motion for a temporary injunction, requesting that the court prohibit Grimmel from soliciting HRH’s customers, from accepting business from such customers, from continuing to do business with such customers, and from using confidential or trade secret information. HRH obtained an ex parte order granting a temporary injunction against Grimmel and posted a bond of $160,000.
 

 Grimmel moved to dissolve the injunction and a hearing was held before a magistrate. The general magistrate issued a
 
 *959
 
 Report and Recommendation proposing that the temporary injunction be dissolved. HRH timely filed its exceptions to the general magistrate’s report and requested a hearing. On that same day, the trial court adopted the Report and Recommendation of the general magistrate without a hearing. HRH appealed the order and this court remanded, ordering the trial court to hold a hearing on the exceptions.
 
 See Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel,
 
 16 So.3d 167 (Fla. 4th DCA 2009).
 

 On remand, the trial court held a hearing which resulted in the trial court denying the exceptions filed by HRH, granting the motion to dissolve the temporary injunction, and ratifying and approving the general magistrate’s Report and Recommendation.
 

 “The standard of review of trial court orders on requests for temporary injunctions is a hybrid.”
 
 E.I. DuPont de Nemours & Co. v. Bassett,
 
 947 So.2d 1195, 1196 (Fla. 4th DCA 2007) (citing
 
 Collucci v. Kar Kare Auto. Grp., Inc.,
 
 918 So.2d 431, 436 (Fla. 4th DCA 2006)). “To the extent the trial court’s order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.”
 
 Id.
 

 A trial court may grant a temporary injunction if the complainant proves “(1) the likelihood of irreparable harm, (2) the unavailability of an adequate remedy at law, (3) a substantial likelihood of success on the merits, and (4) that a temporary injunction will serve the public interest.”
 
 Envtl. Servs., Inc. v. Carter,
 
 9 So.3d 1258, 1261 (Fla. 5th DCA 2009);
 
 see also Coined,
 
 918 So.2d at 438.
 
 Environmental Services
 
 further held:
 

 Post-employment restrictive covenant agreements are valid restraints of trade or commence under certain conditions. Specifically, section 542.335, Florida Statutes (2005), which took effect on July 1, 1996, contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in employment contracts. A violation of an enforceable restrictive covenant creates a presumption of irreparable injury. Section 542.335 employs the term “restrictive covenants” and includes all contractual restrictions such as non-competition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements, and all other contractual restraints of trade. If valid, a restrictive covenant may be enforced by way of temporary and permanent injunctive relief. § 542.335(l)(j), Fla. Stat. (2005).
 

 Section 542.335(1), Florida Statutes, permits enforcement of contracts that restrict or prohibit competition, but only “so long as such contracts are reasonable in time, area, and line of business .... ” The statute also requires “that any restrictive covenant be set forth in a writing signed by the person against whom enforcement is sought, and that the restraint be shown to be reasonably necessary to protect a ‘legitimate business interests [sic]’ justifying the restriction.” A “legitimate business interest” includes “substantial relationships with specific prospective or existing customers ... or clients.” § 542.335(l)(b)3., Fla. Stat. (2005)
 
 [2]
 
 . The party seeking enforcement of the non-eompete agreement must present a prima facie case that the restrictions are reasonably necessary to protect its legitimate business interests. § 542.335(l)(c), Fla. Stat. (2005). The opposing party then has the burden of proving the contractual restraint is overbroad, overlong,
 
 *960
 
 or otherwise not reasonably necessary to support the restriction.
 

 Envtl. Servs.,
 
 9 So.3d at 1261-62 (citations and footnote omitted).
 

 The Employment Agreement signed by Grimmel provided in pertinent part:
 

 5.
 
 NONPIRACY COVENANTS.
 
 For the purpose of this Agreement, the following terms shall have the following meanings:
 

 “Customers” shall be limited to those customers of Employer for whom there is an insurance policy or bond in force or to or for whom Employer is rendering services as of the date of termination of Employee’s employment;
 

 “Known Customers” shall be limited to those “Customers” with whom Employee had personal contact, or for whom Employee handled insurance or bonds, or whose risk management characteristics became known to Employee, in the course of the performance of Employee’s employment duties for Employer;
 

 “Prohibited Services” shall mean (i) services in the fields of insurance or bonds or (ii) services performed by Employer, its agents or employees in any other business engaged in by Employer on the date of termination of Employee’s employment. “Field of insurance” does not include title insurance, but does include all other lines of insurance sold by Employer, including, without limitation, property and casualty, life, group, accident, health, disability, and annuities;
 

 [[Image here]]
 

 “Restricted Period” shall mean the period of two (2) years immediately following the date of termination of Employee’s employment.
 

 Employee recognizes that over a period of many years the Employer (as defined in paragraph 4) has developed, at considerable expense, relationships with, and knowledge about, Customers and Prospective Customers which are legitimate business interests and constitute a major part of the value of the Employer. During the course of Employee’s employment by Employer, Employee will have substantial contact with these Customers and Prospective Customers. In order to protect the Employer’s legitimate business interests, Employee covenants and agrees that, in the event of the termination of Employee’s employment, whether voluntary or involuntary, whether with or without cause, Employee shall not, directly or indirectly, on Employee’s own behalf or on behalf of any other person or entity, as an owner, stockholder, director, employee, partner, agent, broker, consultant or other participant during the Restricted Period:
 

 (a) solicit a Customer or accept an invitation from a Customer for the purpose of providing Prohibited Sendees to such Customer;
 

 (b) solicit a Known Customer or accept an invitation from a Known Customer for the purpose of providing Prohibited Sendees to such Known Customer;
 

 [[Image here]]
 

 The general magistrate’s report held that HRH did not provide competent evidence of what can be construed as a legitimate business interest when applied to the action HRH was seeking to enjoin. The basis for this holding was that the evidence demonstrated that every customer was brought to HRH by Grimmel and that
 
 *961
 
 they sought Grimmel because of who he was and not because he worked for HRH.
 

 In
 
 Brown & Brown, Inc. v. Ali,
 
 494 F.Supp.2d 943 (N.D.Ill.2007) (applying Florida law), the court held: “There is little question under Florida law that an employer has a legitimate business interest in prohibiting solicitation of its customers with whom the employee has a substantial relationship.”
 
 Id.
 
 at 950 (quoting
 
 N. Am. Prods. Corp. v. Moore,
 
 196 F.Supp.2d 1217, 1228 (M.D.Fla.2002)). “ ‘[T]he right to prohibit the direct solicitation of existing customers’ is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer.”
 
 Atomic Tattoos, LLC v. Morgan,
 
 45 So.3d 63, 65 (Fla. 2d DCA 2010) (quoting
 
 Dyer v. Pioneer Concepts, Inc.,
 
 667 So.2d 961, 964 (Fla. 2d DCA 1996)).
 

 Based upon the statute’s provision that “substantial relationships with specific prospective or existing customers” is a legitimate business interest, it appears that even though Grimmel brought these customers into HRH, Grimmel was HRH’s employee and that was what his job entailed. He was a sales producer and it was his job to find customers. Even though he was acquainted with some of these people before he worked for HRH, he did not have a prior business relationship with them.
 

 In
 
 Atomic Tattoos,
 
 the court held that the right to prohibit solicitation of existing customers by an employee is a legitimate business interest. The general magistrate factually found that each of the representatives of the management groups solicited Grimmel. In
 
 Environmental Services,
 
 the former employees, against whom the injunction was entered, argued that their employer’s customers elected to end their relationship with the employer of their own accord and, therefore, the employer lacked any legitimate business interest worthy of protection by way of enforcement of the non-compete clause. Citing
 
 Scarbrough v. Liberty National Life Insurance Co.,
 
 872 So.2d 283, 285 (Fla. 1st DCA 2004), the Fifth District noted the following:
 

 [T]he First District discussed the situation where former clients initiate contacts with employees at their new place of business, explaining that “solicitation” can include a transaction in which the employee was proactive, regardless of whether the customer or employee initiated the transaction. Here, Carter confirmed that he discussed his new business venture, NRC, with ESI clients. There was also ample evidence that Carter actively enticed existing customers away from ESI. More importantly, regardless of who initiated the contact, the agreements clearly prevent the former employees from “[performing] services for any current, former or prospective customers [ESI] with whom employer [sic] had any business-related contact (contact intended to advance the Company’s business interests) during his/her employment with the Company.”
 

 Envtl. Servs.,
 
 9 So.3d at 1266. Under the agreement in force here, Grimmel was prohibited from both soliciting and accepting an invitation from a known customer for the purpose of providing prohibited services. The general magistrate incorrectly applied the law and the contract to the facts, thus making her finding of no legitimate business interest clearly erroneous.
 

 The general magistrate was also in error in finding that the public interest would not be served by maintaining the injunction. In the general magistrate’s report, she held:
 

 
 *962
 
 The public interest will not be served if a temporary injunction is issued. The Plaintiffs former customers are not owned by the Plaintiff. These customers are not bound to Plaintiff based upon a[sic] Employment Agreement between Plaintiff and Grimmel, as the former customers are not parties to the Employment Agreement or any restrictive agreement with the Plaintiff.
 

 In
 
 Pitney Bowes Inc. v. Acevedo,
 
 2008 WL 2940667 (S.D.Fla.2008), in holding a former employee be enjoined from,
 
 inter alia,
 
 soliciting prospective and current customers of the employer, the court held as to the public interest element:
 

 I also conclude that an injunction here will not be adverse to the public interest. On the contrary, the public has a cognizable interest in the protection and enforcement of contractual rights. This interest is particularly strong with respect to non-compete agreements, as the Florida Legislature has determined that the enforcement of such agreements is in the public’s best interest.
 
 See Autonation [ Inc. v. O’Brien, Jr.,]
 
 347 F.Supp.2d [1299][,] 1308 [ (S.D.Fla.2004) ] (“the Florida Legislature has determined that in order to refuse enforcement of an otherwise enforceable restrictive covenant based on public policy considerations, the specified public policy must substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint”).
 

 Id.
 
 at *6 (citations omitted). The fact that the customers will have to use a different insurance broker does not make the enforcement of this agreement against public policy. See,
 
 e.g., Scarbrough,
 
 872 So.2d at 286 (insurance agent enjoined from soliciting customers of former employer on behalf of current employer).
 

 The trial court erred when it adopted the Report and Recommendation of the general magistrate and dissolved the temporary injunction against Grimmel. HRH proved that it had a legitimate business interest in its substantial relationships with specific existing customers; that the restrictive covenant prohibiting the piracy of those customers was no broader than necessary to protect that interest; that Grimmel solicited and serviced those customers contrary to the terms of the agreement; and that HRH was irreparably damaged as a result, both as a matter of fact and of statutory presumption.
 

 The trial court abused its discretion in adopting the Report and Recommendation of the general magistrate which was based on both an erroneous view of the law and an erroneous assessment of the evidence. We, therefore, reverse the trial court’s order dissolving the temporary injunction.
 

 Reversed.
 

 CIKLIN and LEVINE, JJ., concur.
 

 [2]
 

 . Other "legitimate business interests" under section 542.335(l)(b) include trade secrets, valuable confidential business and professional information that otherwise does not qualify as trade secrets, and customer, patient or client goodwill, which includes "extraordinary or specialized training.”